You may be seated. Ms. Platt. Good morning, Your Honors. May it please the Court. The District Court in this case erred in at least two ways, when it denied Spencer Peters' motion for a sentence reduction under Amendment 782 to the federal sentencing guidelines. First, the District Court erred as a matter of law by apparently silently making a new drug quantity finding without any explanation which also hinders this Court's appellate review. Second, the District Court erred as a matter of fact because Spencer, and I apologize for referring to my client by his first name, but given the circumstances of his co-defendant being his brother, I will. Anyway, Spencer is not properly attributable with more than 25.2 kilos of crack under the relevant conduct rules. A jury found that Spencer was guilty of conspiracy to distribute 50 grams or more of crack. At point 5 kilos or more. The District Court never adopted the PSR in this case, and in any event, the PSR itself also attributes to Spencer only 4.5 kilos or more of crack. When you say that the District Court never adopted the PSR, my recollection is that page 785 of the record, the Court said, quote, it adopts the pre-sentence investigation report without change. How much more did he have to say? I would like to, if I can grab my joint appendix, Your Honor. Thank you. My reflection, Your Honor, and I'm happy to double-check, is that the Court adopted Terence Peters' PSR, and that sentencing transcript is in the joint appendix. I checked pretty carefully, and he never did so in Spencer's sentencing, and of course the PSRs are different. They're different. While co-defendants, they're two different. Well, but aren't the relevant facts the same? Well, no. Not in terms of relevant conduct. Sentencing, you know, relevant conduct is different for every defendant, as I've said in multiple cases in my brief. 785. And if you prefer, you can come back up and rebuttal and deal with that. Thank you very much. I appreciate that, sir. You said 785, correct? Yes. So, as I pointed out in my brief, relevant conduct attribution of drug quantity is different for every defendant, even in a single conspiracy. Because of 1B1.3, the relevant conduct guideline, and the fact that it has to be the scope of jointly undertaken criminal activity that was agreed to, as well as the requirements of reasonable foreseeability, and that the particular actions have to be in furtherance of the specifically jointly undertaken activity, there's a three-prong relevant conduct test, that there are dozens of cases from this Court and your sister courts noting that the scope of drugs attributable to an entire conspiracy are not automatically attributable to every defendant. For example, as the government noted, as to the kingpin of the conspiracy, Terrence Peters, the Court did say that it thought it was a significant amount of crack cocaine, 150 kilos, but Spencer's involvement was much more limited than Terrence's. Every defendant gets their own relevant conduct attribution. That's the clear law of drug sentencing. So in this case, you know, in my brief, in the second half of my brief, I very carefully went through and tried to figure out the exact evidence that could have been attributed to Spencer. The government didn't even respond to that allegation, relying instead on the scope of the entire... Didn't the pre-sentence report have the whole idea that it says conspiracy members would be well responsible for well in excess of 4.5 kilograms? The pre-sentence report said that. Yes, sir. And you never objected to that? Well, I'm trying to remember. I do believe that counsel, which was not our office at that time, did object to the drug quantity finding, but it didn't matter at that time under the drug guideline. 4.5 was the maximum. No, because if a district court, if you don't object and put something in issue, likely the district court's going to adopt it and that's going to be impacted. So the pre-sentence report is pretty clear and it says at least 4.5 kilograms. And we don't object to a finding of 4.5 kilos, Your Honor. At this point, to be ineligible, it has to be 25.2 kilos, which is far well in excess of 4.5 kilos. I thought the question was whether the district court was... I thought your argument was that the district court was precluded somehow from making a drug quantity finding. That is not my argument, Your Honor. My brief is clear. Your sister circuits – this Court has not spoken to it, but your sister circuits are clear that district courts may, although they don't have to, make further drug quantity findings during a 35... Your Honor, it's not inconsistent... Correct. ...with the previous. You don't contend this was inconsistent? No, that's not our argument, Your Honor. Our argument is that the district court didn't do any analysis at all and didn't make any findings or any conclusions about relevant conduct when it denied the 3582 motion. So it's not that it could not have done so. It's that the district court did not do so. It just assumed ineligibility without any explanation or makings of findings or conclusions that would make Spencer ineligible as a matter of law. And so under almost... Well, I don't want to say all the... All of the circuits that have addressed this in a published opinion agree that the judge can do that. But in this case, the judge did not do that, which is the first legal error that we raise. And so he should have made findings about, under 1B1.3, about the scope of the jointly undertaken activity and what is reasonably foreseeable and what is in furtherance of the jointly undertaken activity as to Spencer Peters before he just concluded that he should be determined now to be attributable with 25 kilos. You're saying that the district court didn't make any... didn't supply any reasoning? The court adopted the PSR, and the PSR had stated that the conspirators had trafficked at least one kilogram of cocaine, hydrochloride, which was then for approximately eight years. So as an initial... And that would carry you way above 25.2 kilograms. So, Your Honor, first of all, I'm still not sure that the PSR was adopted in this case. But even if it were, that is a finding as to the entire conspiracy. That is not a finding as to Spencer's relevant conduct. That's not how 1B1.3 works. Under this Court's decision in Bolden and in White, the D.C. Circuit decisions in Mellon and in, I think it's Wish, W-Y-C-H-E, that I cited, that's not how relevant conduct works. Every court has said you cannot take the amount of the entire conspiracy and automatically attribute it to every defendant. That's illegal under the relevant conduct precedent of this court and every other court in the federal system. And that is what it appears the government is asking you all to assume and what it asks Judge Payne to do. But that's not... Relevant conduct has a definition and it has a methodology, and that is not the methodology. You can't just take the whole conspiracy and lump it onto every single participant in the conspiracy. In addition, as we pointed out, Spencer was in jail for more than half of the time of the conspiracy. This is not an argument about withdrawal. It's an argument about jointly undertaken activity within the meaning of 1B1.3. So you can't just say everything that happened for eight years is automatically attributable to everyone, never mind someone who wasn't even present in Richmond at that time. Well, let's talk about your point about him being in jail. The conspiracy lasted, or at least the PSR said the conspiracy lasted for eight years. It's from 2000 to 2008, Your Honor. It's in the indictment. Okay. But we know that from January 2000 until December 2001 that Peters participated. Assuming you mean Spencer Peters, Your Honor. Actually, there's record evidence from the trial from Witness Matthews that Spencer was not very much involved heavily in 2000 and 2001 and that Spencer became more involved in late 2003 and 2004. So he gets arrested in January of 2002, and he gets released. He's on parole 2003 to 2005. He was released in October of 2003, Your Honor. For 184 weeks. It seems to me he was out of jail a good bit of those eight years, possibly excluding December 2001 until he was released on parole in October 2003. When you look at the calculations in the pre-sentence report, 25.4 seems a very conservative number. Well, Your Honor, again, you cannot take the behavior of the entire conspiracy under the relevant conduct rules and attribute it to every defendant. So it is undisputed, and there are some discrepancies about his exact dates of release. Did you raise that particular point, Your Honor? Spencer was pro se below. But what he did argue is that my client was pro se in the district court for this purpose. Did anybody object to the PSR on this particular ground, or did anybody object? Yes. Spencer has repeatedly objected to the drug quantity finding. On direct appeal, it was not addressed. In his denial of his crack to, sorry, Amendment 750 motion, this court expressly declined to address drug quantity. And in his pro se 3582 motion, under Amendment 782, Spencer again objected regarding drug quantity. He has consistently said that the court should not hold him responsible for anything more than the 4.5 kilos that was found in sentencing. In your brief, I mean, I understand your argument with respect to relevant conduct, but you say that your definition of relevant conduct, it seems to me, is a bit too narrow. You say in your brief at page 19 that your client can only be responsible for, quote, distributions that he undertook and those that were jointly undertaken by him and co-conspirators and reasonably foreseeable to him and in furtherance of that jointly undertaken activity. That's not right. Well, Your Honor, I mean, it's jointly undertaken by him and conspirators. I take that from the meaning of the word jointly. He needed to be directly active in each and every one of these transactions. And we know that's not correct. No, Your Honor, that's not my suggestion. I apologize if you took that way. It's jointly undertaken as part of his agreement to conspire with any of the co-conspirators. But he has to jointly undertake it. The language is jointly undertaken. And so it's not jointly undertaken if we were in a conspiracy. Between you and Judge Gregory does not necessarily mean that I am jointly part of that. I could be, but I don't have to be. And that's why you need these specific relevant conduct findings which, again, this court, for example, in Bolden or in White and every other court say, the court has to do that analysis for every defendant before holding a defendant responsible for the transactions of his co-conspirators. And that analysis never happened at sentencing in this case. At the time of sentencing, I think it was harmless error and, of course, was not raised. But now it is harmful because if Spencer is responsible between 4.5 and 8.4 kilos, the low end of his range is now 262 months. If it's between 8.4 and 25.2 kilos, the low end of his range is now, I think it's 327 months. Spencer is serving a 480-month sentence. So if he's responsible for the jointly undertaken activities for anything less than 25.2 kilos, we're talking about his eligibility at least to seek a reduction of many years off of a very, very lengthy sentence. How does the fact that your client was also identified as a manager or manager affect that calculation? So he did get the three points under the enhancement. But at the same time, he received a substantial downward variance from what was then guidelines life. And in the statement of reasons, the written statement of reasons, and also in the sentencing transcript, Judge Payne said it was because of Spencer's limited role. So while he did have the three points for managing, the record says basically at times occasionally when Terrence was out of town, his much simultaneously recognized Spencer's limited role in the conspiracy. And I haven't found any cases, and the government didn't cite any, that say that just because you get a three-point bump, you automatically get a greater amount of relevant conduct. I didn't find any case law making that connection, and the government didn't cite any either. I looked. I thought that was an interesting sort of intellectual point. Suppose you could manage three to five people for a very short period of time, and there might be a quantity during that time, and there'll be enough for the points, but not the overall foreseeability question for the conspiracy. That's exactly right, Chief Judge. And I think the evidence in this case supports that finding, because people testified at the trial that Spencer only really supervised anybody when Terrence was in Trinidad visiting family or I think locked up. I couldn't get Terrence's jail records because he's not my client. He has statutory and mandatory life. He's not going anywhere. But that is an interesting point, and that's exactly what we think the trial record in this case shows as to Spencer. So as I said, you know, this court at this point could itself make an eligibility determination, as the Tenth Circuit did in battle, or it could remand for Judge Payne to do so and do an actual relevant conduct analysis in the first instance, which, again, never happened at sentencing, never happened in either 3582 motion. But either way, we would ask the court to reverse for the legal error of not doing a relevant conduct analysis on the record and just summarily holding Spencer ineligible as a matter of law. And then, as I said, I think it's within the court's discretion to make the eligibility determination itself, which is a question of law, or you could ask Judge Payne to do that on remand. But in any event, either of those reliefs would be what Mr. Peters requests. Thank you, Ms. Black. I reserve the rest of my time for rebuttal. Thank you, Your Honor. Ms. Duffy? Good morning. May it please the Court. Peter Duffy for the United States. As the Court knows, defendant argues that the district court, Judge Payne, committed clear error in finding that he was ineligible for a sentence reduction under Section 3582. But the district court was quite proper in finding from the record that he  attributable drug weight to Spencer Peters was well in excess of 25.2 kilograms of crack cocaine. And the facts before the district court at that time was that he played a leadership role in this conspiracy, that he worked closely with Terrence Peters, who was his brother and was the clear leader of the conspiracy, but that Spencer Peters was second only to Terrence Peters. And so one of the points I'd like to make, Judge Payne did do a variant sentence at sentencing. Terrence Peters got a life sentence. Spencer Peters came in under the guidelines with a life sentence. Judge Payne did mention that his role is different from Terrence Peters, therefore I'm going to reduce his sentence to 40 years. As the Court's well aware, that's a very significant sentence. It wasn't as if he was making the finding. I mean, the Court can read the record. I don't believe Judge Payne was intimating in any way that Spencer Peters had a very limited role in this conspiracy. He was comparing it to the role that Terrence Peters played. What was the basis of the judge's findings? I mean, did you find it in the pre-sentence report or what? The findings . . . What is the basis for the finding? What in the record is the basis for the finding? The finding of the 25.2 kilos now? Yes, the finding of the 25.2. Very well. What in the record is the basis? Well, I think, as the Court knows from the record, Judge Payne presided over this trial. It was a lengthy trial. As we've talked about earlier, the pre-sentence report detailed a kilogram a week and found well in excess of 4.5 kilograms, so that's in the pre-sentence report. Was there an objection raised? Judge, I don't believe there was any objection . . . You said that there was . . . I'm sorry. . . . and that he objected regularly? I don't believe there's anything in the record that he objected to The pre-sentence report found well in excess of 4.5 kilograms because that was the highest rating under the guidelines at that time. I don't think there's anything in the record that indicates that he objected to that drug weight. He did object to the leadership enhancement. Was there a revised sentence report in connection with the reduction motion? I don't believe they did do a revised pre-sentence report. I'm not aware of one if they did. The complaint said there's nothing in the record that suggests that the court ever sort of adopted in terms of the PSR for suspension period. Judge, I saw that and I looked through. I did not see him utter the words, I'm adopting the pre-sentence report. You didn't. It's actually a check mark and a statement of reasons after the fact. Right. Should we consider that? I think you can consider that as him adopting. If you read the context of the sentencing hearing itself, as I said, he did object and we did have a hearing on his objection to the leadership role. And so we went through and both made arguments for that. He made a finding that the leadership role was proper and I think that's when he made the comments that Spencer Peters' role was different from Terrence Peters. Terrence Peters got a 4.4 level enhancement for leadership role. He applied a 3 level enhancement to Spencer Peters. But found him and made several comments at the original sentencing that he found the three levels. He said that he was second only to Terrence Peters, that he supervised the business and subordinates, and that he was, as Judge Payne noted, he was CEO when Terrence Peters was not there. He noted on the record that this conspiracy was of long duration, insidious in nature, and a scourge on the community. And while there was no specific finding on the weight, as we noticed, Terrence Peters' sentencing came right before Spencer Peters' sentencing. And I think that might have been part of the confusion with Judge Payne and not making, uttering the words, I'm accepting the second pre-sentence report. They were back-to-back sentences. It was required to be an individual sentencing, isn't it? There is, Judge. And I don't mean to imply that they were merged, but they were back-to-back. In other words, no need to go through the whole spiel for the second person. Is that what you're saying? Well, I'm not specifically saying that. I think it was an oversight. Was the finding of weight different between the brothers? There was not. That's the problem, isn't it? There is no nuancing at all in terms of that. You talked about the enhancements, and everything seemed to have been sort of a comparator type analysis. Where you're not as bad as your brother was, and those kind of things. But it's a different question in terms of the quantity, the weight, isn't it? Foreseeability, the Collins-type analysis. Right. Well, let me address that then. Well, first, at Terrence Peters' sentencing, drug weight was not an issue either. It was not contested. And so under both these sentencing hearings, as Rule 32 points out, the judge is not required, not mandated, to make findings on things that aren't contested before it at the time. So there was no real reason for the judge to make any finding, other than this was in excess of 4.5 kilograms. And that set the guideline range for him to consider. And as I said, both of these defendants, the guideline range was life. But these reductions, the whole purpose was Congress was trying to rectify some of the sort of draconian sentencing that had happened before it. Now, isn't that the time to look, in fact, what the culpability as to quality is before you determine they're not eligible for the reduction? Well, Judge, first, I think, and I would respectfully disagree with Ms. Platt, I think she's assuming that Judge Payne didn't do that. Now, the order that he made in response to the 3582 motion, let me get to my notes on that. The order did, while it didn't make a specific finding, we don't believe that he had to make a specific finding. But what it does do is it specifically says that he has considered the defendant's motion, the government's response, and the reply. And so let me touch on one thing on that point. I've read the defendant's original 3582 motion. I don't see where he ever raised his drug weight as an issue. He certainly didn't do it in his first motion. We responded and said he's ineligible, he's well in excess of 25.2 kilos, and made a much more limited argument than we did in our brief here. But certainly that was our point to him. That was the focus of the whole sentencing hearing, wasn't it, the 3582? The quantity? I mean, wasn't it the hearing on the motion to reduce the sentence based on the revised guidelines? Well, there was no evidentiary hearing, if that's what the Court's asking. Was there an argument on it? There was no oral argument on it. He filed his motion, I responded, and he filed a reply. And I would note even his reply didn't really make an argument that he was less than 25.2 kilos. He made . . . So all of that is in the record, the motion, the response, the reply? It is. It's in the Joint Appendix, Judge. I think . . . I thought I had that in order. His order denying the 3582 I know is the Joint Appendix 748. And so that's where he specifically says, I reviewed the defendant's motion, the government response, and the reply. So I point out one thing. First, he never raises drug weight as an issue that I saw, and he didn't raise it at sentencing. So are you now saying that the issue is waived? No, I'm not saying it's . . . I don't believe it's waived. I think he can file a reduction and ask for a reduction. The only reason he gets a reduction under 3582 is a reduced guideline range, and the only way you get a reduced guideline range here would be drug weight. So I'm just pointing out that he doesn't raise the 25.2-kilogram argument either in his first 3582 motion or in his reply. Why not? I mean, what is raised? Because the whole basis of a reduction is the drug quantity. As Ms. Platt said, it's a pro se motion. He simply makes the argument that the entire guideline range has been reduced by two, is my reading of his motion. It's drug minus two. The guideline's been reduced by two. I'm asking the court to reduce my sentence because my guideline range has been reduced, I think. So issue is joined as to quantity. He's saying 3582, I'm eligible for a reduction to minus two. The issue is joined as to I don't have that much drug weight, and I'm eligible. So the issue is joined on that, and that was . . . Well, I guess indirectly, Judge, I guess he's made that claim. He never . . . He never did, and the court never . . . The biggest problem is the court never looked at whether there should be an adjustment between the 2002 to 2003 period when he was incarcerated and May 2005 through February 2008. There's no adjustment made there. It's just sort of, all right, at the time, the guilty plea, that was the quantity for both of them, the conspiracy. Now when you're coming back saying you're eligible for the reduction, it was never done. Well, Judge, as I said in the district court's order denying the 3582, he does say he's reviewed this, he's reviewed the PSR, he's reviewed the record, and he's reviewed the probation officer's worksheet. And found what? As to quantity. You're right. What's the finding as to quantity? He doesn't specifically say a finding other than that the drug weight is such that he's ineligible under 3582. What drug weight? Well, he doesn't utter the number 25.2, but it's clear . . . It doesn't. I mean, I know it's just not there. I know you're right. That's what you're supposed to do, but it's not a finding that's individualized to him as to the quantity of drugs such to make . . . eligible. Well, Judge, I guess I respectfully disagree with that he makes no finding. He certainly doesn't make an explicit finding. Well, he did, because basically he took the conspiracy finding when they both were convicted, and that broadly was enough, because there was no differentiation made. Therefore, Collins and false suitability has changed the landscape of the analysis of the jurisprudence. I mean, so you just can't cookie cutter and say now, because the whole idea was to help people from these long, long sentences. Right. Like if you imagine people saying, like you said, oh, he only got 40 years. Now you can say that and say, yeah, that is pretty light now based on some of the sentences people get. I don't think I said only, but maybe I did. But I'm conceding. But then you said in the context, well, his brother got life, and he only got 40, but my goodness, 40 years in prison is a long time. It is a long time. There's no doubt, Judge. Well, let me point then to why I think it was appropriate, because I think the judge did find that it was well in excess of 25.2 kilos from his order. And I think that it was clear from the record, from the trial record, that he could do that easily. First, this was a conspiracy that began in 2000, and the government's evidence at trial relied on many of the co-conspirators, Matthews, Dove, and Jones being the main three, who all said they started into this conspiracy, were invited down. Matthews started in 2000, and upon his arrival, the defendant was already down working with his brother, delivering crack, collecting money. That's on joint appendix starting at 49. In 2002, he described the defendant were making these trips to New York in the Green Thunderbird, which was his car. That was actually the car he was arrested in, 2005. What are you reading from now? I'm just summarizing his testimony at trial, Your Honor. Are you suggesting, urging that we take as a basis for the district court's findings his familiarity with Peter's record, Spencer Peter's record from a rather lengthy trial, plus his adoption of the findings of the pre-sentence report for the first hearing? Absolutely. He presided over this, I think it was a five-day trial. He heard all of this evidence. The evidence ultimately came out is that approximately five to seven was this core conspiracy with Terrence Peters at the top. Clearly, Spencer Peters, the defendant here, was second in command, and several lieutenants, including this Matthews, Mr. Dove, and Mr. Jones, and that the conspiracy was… It's very difficult to see how, given Judge Payne's familiarity with the trial and given what he adopted in the first pre-sentence report, I mean, it may be that he didn't cross an I, dot an I, cross a T. I just want as a practical matter whether there's any chance at all that Judge Payne would do something differently if there were a remand. I mean, I don't know that… Judge, I don't believe he would, but, of course, I'm a bit biased on that, but I… I can't imagine it because he didn't come to the case cold. He had – this wasn't a guilty plea. It was a trial. He was – how long was the trial? Four or five days. All right, he has a four- or five-day trial, and he's familiar with that, and then he has the pre-sentence report on which he based the first drug quantity finding, and it's not disputed that the sentencing – that the conspiracy lasted for a good while, and… Judge, there were pre-trial – I mean, post-trial motions as well. I think there was a motion for a new trial. I think that was by one of the other defendants, but there were a series of post-trial motions that he was involved in that, I would argue, kept his memory fresh on the facts of this case. A prior 3582 by Spencer Peters, which the Court denied. And so even though there are several years between the trial and this 3582 motion, Judge Payne was all along the way there was litigation going on in this matter. And so I think the Court's point is well taken here, as Judge Payne was very familiar with these facts. And before I run out of time, if I could just point, I know Judge Diaz mentioned this. We believe that Mr. Peters or the federal defenders are misstating 1.1.3. 1.1.3, the relevant conduct and the guidelines, and the judge noted this. There's subsection A and subsection B. Well, subsection A is common sense. It's you're held accountable for your acts and omissions and aiding and abetting. Subsection B is you may also be held accountable for the acts of others. Now, there is a difference between simple conspiracy liability on the one hand and relevant conduct-specific drug weight on the other. But here the jointly undertaken activity is described under the sentencing guideline as a criminal plan scheme enterprise undertaken by the defendants, whether or not it's charged as a conspiracy. Well, here it was charged as a conspiracy. And it's not really that complex. The jointly undertaken activity was we have a source in New York. We make weekly runs to New York. We bring one to two kilos down per week. Terrence Peters, among others, cooks it into crack. And we have a house on Fifth Avenue first, starting in 2002, and then they move to a house on Detroit Avenue. That is our distribution center. We have a core group of people, Jones, Matthews, Spencer Peters, Terrence Peters, and a few others that work out of this house, and that's the jointly undertaken activity. Now, the question then is even though, say, when Spencer Peters was locked up for a short period of time in 2002, is it foreseeable to him when the runs are continually being made to New York, is that foreseeable to Spencer Peters? And we think that it was foreseeable to him. He wasn't locked up for very long. And when he was released in 2003, according to several witnesses, he came immediately back to the distribution house on Fifth Avenue and immediately picked up where he left off. Was that part within the scope of the scheme and in furtherance of the scheme? And so those are the three things that bring that from a conspiracy liability into relevant conduct. And we think all through from 2000, certainly up until his arrest in May of 2005, and as I point out in my brief, even after he's arrested, in May of 2005, we had a witness testify at trial that he was recruiting people in the jail detailing this scheme specifically. We make runs to New York. We use this car. We. . . You're conflating apples and oranges because it may be relevant conduct, for example, that they took 100 trips to New York to try to make this deal work. That would be relevant conduct. But suppose they didn't. Only one time were they able to procure some drugs. The relevant conduct of the several trips might be relevant in terms of enhancements, management, control, but it wouldn't change one iota the quantity if only one trip they got drugs. You see the difference? Because he only pled guilty to what? 4.5, right? Well, he didn't plead guilty. Oh, I mean what I mean, found guilty, 4.5. So it wasn't required to go further than that. And you're right, one of these things we do them all the time, if you pled guilty or you found guilty at 4.5, you're not eligible, it was easy. But when they change that number, it is important to make the finding. And you say, what difference does it make? He's in jail. Things are still going on. He wasn't in there for long. But do the facts here say they stopped? When he went to prison, they stopped? Well, no, the facts say they went on. I see I'm out of time. Can I answer? Would you mind if I answer my question? Go ahead. Well, I think the facts don't say that they stopped. And the trips to New York, I didn't mean to misstate it, all the witnesses testified. These trips to New York, we were bringing back one to two kilos every trip. And this was on a weekly basis, starting in the year 2000 all the way through. There were some brief times when we stopped. But if you add up even five years of a conspiracy where they're going to New York. Is this in the trial testimony or the first PSR report? The trial testimony that the PSR. It was in both. Well, the PSR simply said, well, in excess of 4.5. And also mentioned weekly runs of one to two kilos per week being brought down over a period of eight years. In other words, the runs to New York were both in the trial testimony and in the PSR report? Very detailed in the trial testimony and mentioned in the PSR, yes, sir. And there was a finding made as to the amount in the sentencing for Spencer Peters. Was there ever a quantitative finding for him? In excess of 4.5, which is? That's all. You're right, because you hit the statutory ceiling. There was no need to. Because that's what Congress wanted you to do. But now you have to go back and see whether or not a person is ineligible for that, which we think people broadly ought to get credit for because they've gotten too much time. They looked at it in terms of demographics. All of those things, they got too much time. It's not, I want you to say, oh, well, 4.5 was enough. No, you have to make a finding, don't you? Because the intent was to bring sentences down. It's almost like you default to reduction unless you're not eligible, right? Right. Well, Judge, all I can say, and I'll conclude, is that we believe Judge Payne's order did make a finding and found in excess of 25.2 kilos. And he had ample evidence, both from the trial and the pre-sentence report, to make that finding. This is under a clearly erroneous standard? It is. We don't believe he certainly wasn't. But it's got to be a finding, though. The problem is it's not a finding. I agree if he had made the finding and we'd be here saying your finding was wrong. But it's no finding. That's the problem, whether it's clear or not. It's just no finding. So we're not at the stage where we're saying we're quibbling over his number. It's the fact that he has no number. So I have to worry about clear error because it's clearly not there. Well, Judge, I'll just reiterate. My position is I think his order makes it clear that his number was in excess of 25.2. Okay. Thank you, counsel. Thank you, Mr. Duffy. Appreciate it. Ms. Platt, you have reserved some time. Thank you, Your Honors. I'd like to start with my colleague's allegation that Spencer, in his pro se 782, 3582 filings, didn't raise drug weight. If the court looks at his pro se motion at JA 782, he references 4.5 kilograms. If you look at his reply, JA 740, 741, 742, and 743, I stopped there. He talks over and over again about the judge said 4.5, the judge said 4.5, now it's 25.2. I read a lot of pro se filings. Spencer's were pretty good. So, Judge Diaz, I admire your eagle eyes. In fact, the written statement of reasons does adopt the PSR. It did not happen at the sentencing hearing. I don't want to quibble about whether that's sufficient or not because, as I said, the PSR only attributes 4.5 kilos to Spencer. And so it doesn't matter, and it was adopted, Your Honor. Thank you for pointing that out. The PSR only ever said 4.5 kilos. And I will say from my experience in the Alexandria District Court, PSRs on worksheet A often actually do have a more specific greater finding. They don't always, but they can. And in this case, they did not. All it said was 4.5. With respect to these continuous runs from New York, as Mr. Duffy noted later in his argument, they were not continuous. The PSR itself on JA 756 says there were times when no drugs were coming down from New York. This is exactly why, as Chief Judge Gregory notes, we need specific analysis in this case because it wasn't one to two kilos every week for eight years. And even if it were, Spencer was not always there, and he was not always jointly undertaking that activity, regardless of his physical presence. This is the relevant conduct analysis that this Court requires. He doesn't need to be there. I agree, Your Honor. I'm sorry. I thought that's what I just said. But he does have to jointly undertake it, and reasonable, foreseeable, and in furtherance of.  substance in the offense of conviction renders the defendant ineligible for a reduction. That's not enough in your view. I think that's an implied finding. It's not an explicit finding, and it is certainly not a relevant conduct analysis. So I would just, you know, there's two. The offense of conviction is, what, 4.5? 50 grams. The actual offense of conviction is only 50 grams. Right, exactly. Yeah, and then the PSR and the sentencing hearing are 4.5. And, you know, Spencer, I don't want to get into privileged conversations. I think Spencer would ask, say there's a hypothetical amendment 900 to the sentencing guidelines that actually finally equalizes crack and powder for the reasons that Judge Gregory has noted and makes the crack trigger the same as the powder trigger for level 38, which I will tell you right now is 450 kilos. Spencer would like to know. I don't see what the relevance of 50, the offense of conviction for 50. I agree that 4.5 is the relevant finding in this case, Your Honor. 4.5 kilos is the relevant current finding that has ever been made at sentencing and in the PSR in this case. But if they ever made the trigger 450 kilos. There's no apprendi issue here in the sense that there's no judicial finding that has exceeded the statutory maximum. That's correct, Your Honor. We didn't raise a Collins or an apprendi error in this case. There is none. But there's a 3582 error, and there's a 1B1.3 error. The legal error is the lack of a finding or an explanation and a relevant conduct analysis. The factual error is that he's not properly attributable under the relevant conduct law. The legal error is what? The legal error is the fact that he did not make a further finding using a proper legal analysis when he denied Spencer's 3582 motion. All he said is you're ineligible. It's still subject to a clearly erroneous standard of review, and many times we will affirm a district court finding if there's ample basis in the record. If there were a factual finding, Your Honor, it would be clearly erroneous. It had to be a factual finding because of at least 25.2. Otherwise, he would have been eligible for the reduction. The order doesn't say that, Your Honor. The court does say that he denied the reduction. He would have been, if it had been less than 25.2, he would have been eligible for the reduction. So we have, I mean, the import of the denial is simply that by itself would constitute a finding. And then you have to go to the question, is there an adequate basis for the finding? And when you put together the trial and the trial testimony over which the judge presided, and then you put together the PSR report for the first sentencing hearing, those seem to me the fact that the judge had the familiarity with it and the fact that when you look at this conspiracy overall, it's hard to believe that Mr. Spencer Peters wasn't involved with his brother and didn't play a key role in it, which lasted for many, many years. And I'm further disturbed by these questions of recruiting out of jail for the conspiracy and continuing after the arrest. I mean, if he wasn't in it to a great degree, why would he have received a leadership enhancement? I mean, just as a practical matter, he seems very involved. I see my time expired more than a minute ago, if I can. Thank you very much. I'd just like to say, Judge Wilkinson, these findings were not made on the record at the sentencing or in this current proceeding, and I would urge the court to look at Judge Posner's decision in Davison and the First Circuit's decision in Candelaria Silver. They are both exactly equal to this case, and Spencer deserves an analysis and will show that the relevant conduct is not equal to conspiratorial liability in this case. I would please ask you to reverse and remand to Judge Payne. Thank you. Thank you, Ms. Blatt. We'll come down with recounsel and then proceed to our last case for the term.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Albert Diaz